IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FATHOM EXPLORATION, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 04-0685-WS-L |
| | ) | |
| THE UNIDENTIFIED SHIPWRECKED | ) | |
| VESSEL OR VESSELS, etc., *in rem*, | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on a variety of issues, including plaintiff's Appeal of Magistrate Judge's Order (doc. 60), claimant United States of America's Renewed Motion for More Definite Statement (doc. 53), and additional concerns regarding the status of claimants State of Alabama and Alabama Historical Commission, the need for continued inventory reports, and plaintiff's failure to submit a timely return of service for the defendant vessel(s).

I.      **Background.**

On October 27, 2004, plaintiff Fathom Exploration, LLC ("Fathom") filed a Verified Complaint bringing suit *in rem* against the Unidentified Shipwrecked Vessel or Vessels, Their Tackle, Equipment, Appurtenances and Cargo Located Within 2 Nautical Miles of Coordinates 30 Degrees 10.220 Minutes North Latitude, 88 Degrees 02.310 Minutes West Longitude (the "Shipwreck"). According to the Complaint, Fathom has discovered and/or engaged in salvage operations upon the Shipwreck, which is alleged to lie "in waters of the Territorial Seas of the State of Alabama and the waters seaward thereof."  (Complaint, ¶ 3.)  Fathom asserts the following causes of action: (a) a claim pursuant to the maritime law of finds for exclusive title, ownership and possession of all artifacts that it may salvage from the Shipwreck; (b) a claim for salvage award based on its rescue of the Shipwreck and associated artifacts from a state of "marine peril" (*Id.*, ¶ 14); and (c) a claim for injunctive relief prohibiting rival salvors from conducting search or salvage operations within two nautical miles of the

geographic coordinates specified by Fathom.

On October 27, 2004, the Court signed a Warrant of Arrest (doc. 4) for the Shipwreck and appointed Fathom as substitute custodian and special process server.  A short time later, both the United States and the State of Alabama appeared in this action and submitted verified statements of right or interest (docs. 14, 16).[1]  The United States indicated that it is aware of various Civil War-era warships submerged in Mobile Bay in the general vicinity of coordinates identified by Fathom.  To the extent that the Shipwreck consists of any such vessel(s), the United States claims title to and ownership over it pursuant to Title XIV of the Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, as well as prior case authorities.  Meanwhile, the State asserted in its verified statement that if the Shipwreck lies in Alabama state waters, then it is a cultural resource to which the State has title, pursuant to the Abandoned Shipwreck Act, 43 U.S.C. §§ 2101 *et seq.*, and the Alabama Underwater Cultural Resources Act, Ala. Code §§ 41-9-291 *et seq*.

Claimants filed motions challenging the sufficiency of the Complaint pursuant to Rule 12(e), Fed.R.Civ.P., and Rules C(2)(b) and E(2)(a) of the Supplemental Admiralty Rules.  In particular, claimants contended that the Complaint should be dismissed for failure to describe the Shipwreck with sufficient particularity to enable them to ascertain either (i) the identity and nature of the vessel(s) that comprise the Shipwreck, or (ii) the precise location and status of the Shipwreck.  On January 24, 2005, the Court entered an Order (doc. 32) denying the motions to dismiss, but finding that Fathom was obligated to furnish claimants with a more definite statement, as follows:

> "[T]he Court is of the opinion that the Complaint falls short of the particularity
> requirements set forth in Supplemental Rules C(2)(b) and E(2)(a).  These rules do not
> require laser-beam precision in the identification of an unknown wreck, nor do they
> oblige a salvor to assume the role of oracle or soothsayer.  But they do require a salvor
> to relate in its complaint reasonably available information concerning the location,
> nature, and embedded status of the wreck on which salvage operations are being
> conducted.  This the salvor has not done."

---

[1]      The latter claim was submitted jointly by the State of Alabama and the Alabama Historical Commission.  For purposes of this Order, the Alabama entities will be referred to collectively as the "State."

(Order of January 24, 2005, at 10-11.)  Based on this determination, the Court directed Fathom to file an Amended Complaint "setting forth such additional reasonable details as it may have concerning the identity, nature, precise location and embedded status of the Shipwreck, consistent with this Order." (*Id.* at 16.)

Fathom did not request reconsideration of this Order, nor did it express to this Court reluctance to divulge the requisite information to claimants for purposes of this litigation.  Instead, it proceeded to file an Amended Complaint, describing generally four shipwreck sites that it characterized as lying in Alabama waters.  (Amended Complaint (doc. 38), at 3-4.)  Fathom's amended pleading explained that "[p]ositive identification of any of these wreck sites could take years of diving, documentation and recovery operations.  As of this writing, however, no one site has yielded any diagnostic artifact sufficient to put a name and date of sinking on that particular site."  (*Id.* at 5.)  Notwithstanding the January 24 Order requiring it to do so, Fathom demurred from submitting the precise locations of any of those wrecks, on the grounds that such data is "proprietary information."  (*Id.* at 3.)

## II.    Plaintiff's Appeal of Magistrate Judge's Order.

Recognizing that claimants might clamor for greater specificity as to the location of the wreck sites, Fathom filed a Motion for Protective Order (doc. 48) seeking to safeguard from discovery information regarding the exact locations from which artifacts have been gleaned.[2]  In an Order (doc. 55) dated April 28, 2005, Magistrate Judge Lee concluded that Fathom had failed to show that it would be irreparably harmed by disclosing the precise locations of the wreck sites to claimants subject to an appropriate protective order.  On that basis, she denied Fathom's request for a blanket exclusion of the wreck locations from the realm of discovery, and ordered the parties to submit a joint motion for limited protective order.  In lieu of proffering such a joint motion, Fathom chose to appeal the April 28 Order to this Court.

Where a magistrate judge has been designated to decide a pretrial matter such as a Motion for

---

[2]      It appears that the impetus for the Motion for Protective Order was, at least in part, Magistrate Judge Lee's oral directive at the scheduling conference on March 16, 2005 that the parties submit a joint protective order relating to disclosure of wreck site locations.

Protective Order, the magistrate judge's ruling is final and the district court does not engage in *de novo* review of that determination. *See Merritt v. International Broth. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981). Instead, the district court may disturb the magistrate judge's final ruling on a pretrial motion only if the appellant shows it to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Local Rule 72.3(e) ("The district court shall modify, set aside, or remand to the magistrate judge any nondispositive order or portion thereof found to be clearly erroneous or contrary to law."); *In re Commissioner's Subpoenas*, 325 F.3d 1287, 1292 n.2 (11th Cir. 2003) ("The district court correctly observed that the standard of review by which it reconsidered the magistrate judge's determination of the instant pretrial matter is clearly erroneous or contrary to law."); *Featherston v. Metropolitan Life Ins. Co.*, 223 F.R.D. 647, 650-51 (N.D. Fla. 2004) ("Final decisions of a magistrate judge are subject to a "clearly erroneous or contrary to law" standard of review by the district court.").

In support of its contention that the April 28 Order was clearly erroneous and contrary to law, Fathom offers three principal arguments. First, Fathom asserts that no court has ever compelled the release of proprietary information relating to the exact location of a shipwreck, and that *Deep Sea Research, Inc. v. Brother Jonathan*, 883 F. Supp. 1343 (N.D. Cal. 1995), *aff'd* 102 F.3d 379 (9th Cir. 1996), confirms that a salvor has an unfettered right to shield such information. (Plaintiff's Brief (doc. 61), at 2-3.) Second, Fathom maintains that it would incur irreparable harm if this information were disclosed because the protective order proposed by the United States "provides minimal confidentiality and maximum disclosure of this confidential and proprietary information" to third parties. (*Id.*)[3] Third, Fathom suggests that disclosure of the precise location of the wreck sites is unwarranted

---

[3]   According to Fathom, irreparable harm would invariably ensue from disclosure of exact wreck locations because it would attract interlopers who would ransack those sites to the detriment of Fathom, which has expended substantial resources in locating them. (Plaintiff's Amended Motion for Protected Order (doc. 50), at 4-5.) Fathom also suggests that these rival salvors may compromise the rights of the United States and the State by damaging the historical legacy of these wreck sites through destructive artifact removal practices. Presumably, however, Fathom could nip these concerns in the bud by proceeding on its as-yet dormant request for injunctive relief to block all such competing salvage activity in the area of concern.

-4-

because the United States has admitted that such information is unlikely to assist it in identifying the vessel(s), inasmuch as its data is non-specific as to exact locations of federal shipwrecks. (*Id.* at 3.) None of these contentions is persuasive.

As an initial matter, the Court finds no error in Magistrate Judge Lee's determination that the *Deep Sea Research* sequence of decisions is inapposite. In *Deep Sea Research*, the district court apparently found in an unpublished ruling that the salvor was not required to disclose the precise location of the shipwreck, where its general location was a matter of public record and there were concerns that unscrupulous divers searching for treasure might plunder the site if they knew its exact whereabouts.[4] But Fathom does not point to any published opinions in *Deep Sea Research* at the district court, Ninth Circuit or Supreme Court levels referencing the propriety of the salvor withholding that information. Even if they had, the inescapable fact remains that the parties in *Deep Sea Research* already knew the identity of the sunken vessel. By contrast, in this action the precise identities of the shipwrecked vessels are unknown, and at least one claimant (the State) has argued that knowledge of the wrecks' exact locations might assist it in determining identity and ownership, which in turn could have considerable ramifications on the strength of its claims. In light of this fundamental divergence between the case at bar and *Deep Sea Research*, it was neither clearly erroneous nor contrary to law for Magistrate Judge Lee to deem the *Deep Sea Research* decisions unhelpful in resolving the Motion for Protective Order.

Fathom's assertion that the disclosure of vessel location information "has never been mandated by *any* court, including the United States Supreme Court" (doc. 61, at 3) is likewise unavailing. As mentioned *supra*, the burden is on Fathom to make a showing that the Magistrate Judge's ruling is clearly erroneous or contrary to law. As such, the relevant question on appeal is not whether any court has ever ordered a salvor to divulge the specific location of a wreck site, but rather is whether any court has ever declared such information sacrosanct and off-limits from discovery in circumstances analogous

---

[4]     In its Amended Motion for Protective Order (doc. 50), Fathom quoted extensively from this unpublished decision and indicated that it was appending a copy of that ruling to its Motion. It failed to do so. As such, this Court lacks any context for the quoted portions of that opinion and cannot reliably gauge its applicability to this action.

-5-

to these.  Fathom has failed to identify a single authority that satisfies this criterion.

Fathom also takes the position on appeal that the United States' proposed limited protective order is unsatisfactory because it would essentially force Fathom "to reveal its most closely guarded and valuable information to an expansive cast," inasmuch as claimants would be permitted to share Fathom's secrets with a veritable multitude of persons.  (Doc. 61, at 2-3.)  The State responds that the proposed protective order contains sufficient safeguards to inhibit improper disclosure because it requires all recipients of this information to execute strict confidentiality agreements.  (Doc. 67, at 3.)  This debate as to the merits of the proposed protective order exceeds the scope of the Order from which appeal is being taken.  Magistrate Judge Lee's ruling neither adopted nor approved the limited protective order to which Fathom objects, nor did it purport to pass judgment on the adequacy of any particular form of protective order.  Rather, the Magistrate Judge simply directed the parties to consult with each other to formulate a mutually agreeable order.  If Fathom is dissatisfied with the United States' proposal, its remedy is to negotiate those terms further, not to appeal the order directing the parties to submit such a proposed order.[5]  As such, whatever infirmities may or may not exist in the draft order prepared by the United States are of no consequence for purposes of this appeal.  The critical issue is whether there is <u>some</u> form of limited protective order that could adequately balance the claimants' interest in disclosure of the vessel locations with Fathom's interest in keeping such information out of the hands of unscrupulous, opportunistic rogue salvage operations.  The undersigned shares Magistrate Judge Lee's confidence that such a form of order exists, and that the draconian measure of excluding the shipwreck locations from discovery in this lawsuit is therefore unnecessary.

Finally, Fathom emphasizes that the United States has represented to the Court that "it is unlikely that knowledge of the 'precise locations' of the sites where the Plaintiff is working will assist the United States in identifying the shipwreck(s)."  (Plaintiff's Brief, at 3.)  However, Fathom overlooks

---

[5]      There is no indication that Fathom has initiated such negotiations with the United States to revise the portions of the limited protective order that it finds objectionable.  Absent such a showing, any request by Fathom for judicial intervention as to the form of the protective order is premature, as a litigant must generally engage in good-faith conferencing with opposing counsel in discovery matters before racing to the courthouse in search of relief.  *See* Rule 16(b) Scheduling Order (doc. 45), ¶ 10.

two countervailing points.  First, even if it is "unlikely" that such information will help the United States identify the vessel(s), it remains possible that it will do so, and the information therefore remains relevant to that claimant.  Second, even if this information could not benefit the United States, the State has made no such concessions, and has steadfastly represented to the Court that location data may assist it in identifying the vessels.  Accordingly, the United States' representations do not render Magistrate Judge Lee's ruling clearly erroneous or contrary to law.

For all of the foregoing reasons, the Court finds that appellant/plaintiff Fathom has failed to demonstrate that the Order entered by Magistrate Judge Lee on April 28, 2005 is clearly erroneous or contrary to law.  The April 28 Order is **affirmed** and Fathom's appeal is **denied**.  The parties are **ordered**, on or before **August 1, 2005**, to submit a joint motion for a limited protective order in accordance with the terms of the April 28 Order.

## III.   Renewed Motion for More Definite Statement.

During the briefing on the Motion for Protective Order, the United States filed a Renewed Motion for More Definite Statement (doc. 53).  The foundation of this motion is the United States' contention that Fathom has failed to comply with the Order (doc. 32) of January 24, 2005 requiring it to file an Amended Complaint "setting forth such additional reasonable details as it may have concerning the identity, nature, precise location and embedded status of the Shipwreck, consistent with this Order."  (January 24, 2005 Order, at 16.)  Although Fathom did file an Amended Complaint, the United States maintains that this submission is non-compliant with the January 24 Order because it lacks information concerning the identity of the wrecks.  In particular, the United States bristles at the representation in the Amended Complaint that "[n]o single wreck site has of yet been positively identified."  (Amended Complaint (doc. 38), at ¶ 4(a).)  The Renewed Motion seeks an order obliging Fathom to reveal all possible identities of the wrecks, including "whatever vessels its research suggests are in the designated area."  (Reply Brief (doc. 63), at 2.)

Contrary to the United States' position, neither the letter nor the spirit of the January 24 Order required Fathom to enumerate in its Amended Complaint every conjecture, speculation, theory or hypothesis it might have as to the possible identities of the sunken vessels.  Rather, the Court's intent

-7-

was merely to require Fathom to share with claimants any reasonable details it might have as to the specific identities of these vessels. Fathom now represents to the Court that it has not identified and cannot identify the wrecks with the information gathered to date, and that the Renewed Motion would effectively require it to "guess" their identities based on patently insufficient data. (Opposition Brief (doc. 59), at 1.) On the strength of this representation, the Court cannot deem Fathom in violation of the January 24 Order.

The Court does not disagree with the United States' contention that information Fathom might have concerning vessel identities would be beneficial to it in formulating and assessing its claims in this litigation. However, the Court cannot and will not require Fathom to amend its pleadings to furnish the United States with a list of "possible" vessels that amount to wild guesses devoid of reasonable factual underpinnings. Fathom cannot be required to furnish the United States with information that it does not possess, no matter how helpful that information might be if Fathom did possess it. Accordingly, the Renewed Motion for More Definite Statement (doc. 53) is **denied**.

That said, the Court will not afford Fathom a "free pass" from identifying the vessels until such time as it has achieved 100% certainty. To do so would be potentially to prejudice claimants in this action by encouraging Fathom to withhold critical information so long as a sliver of doubt remains. Such an outcome is unacceptable. The January 24 Order directed Fathom to provide claimants with "such additional reasonable details as it may have concerning the identity, nature, precise location and embedded status of the Shipwreck." (January 24, 2005, at 16.) This obligation to keep claimants informed is continuing in nature, and the Court expects Fathom to abide by it as this action proceeds. Reasonableness is the touchstone by which Fathom's disclosure or nondisclosure of information to claimants will be judged going forward in this action. For example, if Fathom develops facts giving rise to a reasonable probability that the identity of a sunken vessel is X, then it must disclose that potential identity to claimants. And of course, nothing herein limits the parties' ability to explore these topics further during the discovery process, irrespective of the level of detail in the pleadings.

## IV.   Other Issues.

The Court's review of the file has yielded three additional items that should be addressed at this

time.  First, ever since the inception of this action, plaintiff Fathom has been filing monthly inventory reports in accordance with the Court's Order (doc. 9) dated October 28, 2004.  To date, each of those reports has indicated that no items have been removed from the vessel(s) aside from the four artifacts submitted at the outset of this lawsuit.  It is unclear when Fathom intends to commence removing further artifacts from the shipwreck sites, but such efforts plainly are not ongoing at this time.  Under the circumstances, no constructive purpose would be served by requiring Fathom to continue to submit identical inventory reports on a monthly basis.  Accordingly, Fathom's obligation to submit monthly reports is hereby **suspended** until such time as it begins removing further artifacts from the wreck sites.  If and when Fathom does remove any additional items from the vessel(s), its duty to resume submitting monthly inventory reports in accordance with the Order of October 28, 2004 will take effect immediately.

Second, the file reveals some ambiguity as to the present status of the State herein.  On May 5, 2005, the Attorney General of the State of Alabama filed an Acceptance and Waiver (doc. 57), purporting to waive "any further service upon him of any pleadings, discovery and other matters filed in this cause" and also to waive "the right to be heard."  (*Id.*)  Yet three weeks later, on May 25, 2005, the Alabama Attorney General filed the "Response of State of Alabama and Alabama Historical Commission to Appeal by Plaintiff Fathom Exploration" (doc. 68) suggesting that the State does wish to be heard in this action, notwithstanding its previous filing of an Acceptance and Waiver stating otherwise.  To resolve these mixed signals and avoid further confusion, the State is hereby **ordered**, on or before **August 1, 2005**, to submit a written notice clarifying its intentions in this case, on behalf of both the State of Alabama and the Alabama Historical Commission.

Third, the United States has brought to the Court's attention that to date Fathom has not submitted a return of service on the defendant Shipwreck.  This Court ordered it to do so in the Order Appointing Special Process Server (doc. 8) entered on October 27, 2004, and reminded it of this obligation via Order (doc. 32) entered on January 24, 2005.  Fathom has not complied.  Accordingly, Fathom is hereby **ordered**, on or before **August 1, 2005**, to **show cause** why it should not be sanctioned for noncompliance with the Court's directives to submit a timely return of service on the

defendant Shipwreck.[6]

V.     **Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.     Plaintiff's appeal (doc. 60) of the Order entered by Magistrate Judge Lee on April 28, 2005 is **denied**, and such Order is **affirmed**.  The parties are **ordered**, on or before **August 1, 2005**, to submit to Magistrate Judge Lee a joint motion for a limited protective order in accordance with the terms of the April 28 Order.

2.     The United States' Renewed Motion for More Definite Statement (doc. 53) is **denied**; provided, however, that Fathom is under a continuing obligation to provide claimants with reasonable details that it may come to possess concerning the identity, nature, precise location and embedded status of the Shipwreck.

3.     Plaintiff's obligation to submit monthly inventory reports pursuant to the Order (doc. 9) dated October 28, 2004 is **suspended** until such time as plaintiff begins removing further artifacts or other items from the wreck sites, at which time it will resume immediately.

4.     The State is **ordered**, on or before **August 1, 2005**, to clarify whether claimants the State of Alabama and Alabama Historical Commission intend to continue participating in this litigation as claimants or whether the State intends the Acceptance and Waiver (doc. 57) filed on May 5, 2005 to remain valid and binding.

5.     Plaintiff is **ordered**, on or before **August 1, 2005**, to **show cause** why it should not be sanctioned for its failure to comply with this Court's directives to file a return of service as to defendant Shipwreck.

--------

[6]     In ordering Fathom to show cause, the Court is not entertaining the United States' suggestion, raised for the first time in its Reply Brief (doc. 63) on the Renewed Motion, that this case be dismissed because of plaintiff's omission in this regard.  If the United States seeks dismissal on any grounds, the request must be made via motion, properly supported by appropriate authority, and not simply tacked onto a reply brief for another motion as an afterthought.

DONE and ORDERED this 22nd day of July, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE