IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FATHOM EXPLORATION, L.L.C.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    **CIVIL ACTION 04-0685-WS-M** |
| | ) |
| **THE UNIDENTIFIED SHIPWRECKED** | ) |
| **VESSEL OR VESSELS, etc.,** *in rem*, | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

This matter comes before the Court on plaintiff's filings styled "Status Report and Motion for Additional Time" (doc. 217) and Motion to Approve Notice (doc. 218).

Plaintiff, Fathom Exploration, LLC, brought this action against certain *in rem* defendants, consisting of what it believed to be multiple shipwrecks located near the mouth of Mobile Bay in the territorial waters of the State of Alabama. Fathom asserted claims under the law of finds for possession and ownership of artifacts from those wreck sites, and under the law of salvage for an award for its services in rescuing artifacts from those sites. On March 9, 2012, the undersigned entered an Order (doc. 211) provisionally identifying Shipwreck #1 as the British Barque AMSTEL, which apparently ran aground on a shallow sandbar near the mouth of Mobile Bay in late May or early June 1861, and subsequently disintegrated into the sea.[1] In light of that provisional identification, the relevant parties (Fathom, the State of Alabama, and the Alabama Historical Commission) agreed that the appropriate next step is to provide the descendants and

---

[1] In the Motion to Approve Notice, Fathom writes that it "has identified one of the vessels as the *Amstel*, a British barque believed to have been lost in a hurricane in 1860." (Doc. 218, at 2.) The Court assumes that this statement is the product of an inadvertent drafting error; after all, the information previously furnished to the Court is fundamentally inconsistent with the notion that the *Amstel* was "lost in a hurricane in 1860." If this assumption is incorrect (*i.e.*, if Fathom in fact now believes that the *Amstel* was lost in a hurricane in 1860), then plaintiff must promptly file notice to that effect so that the undersigned may reconsider its provisional identification of Shipwreck #1 as the *Amstel* in light of this new information.

heirs of the AMSTEL's owners, officers, crew members, insurers, lienholders, and so on with reasonable notice and an opportunity to assert any claims of ownership or interest over the vessel or any of its artifacts.

On May 24, 2012, the undersigned entered an Order (doc. 214) that, *inter alia*, directed plaintiff to undertake commercially reasonable efforts to provide legal, effective notice to potential AMSTEL claimants.  Pursuant to that directive, plaintiff was ordered to prepare and submit a proposed notice plan for approval by this Court, such plan to specify the form and contents of the proposed notice, the manner and times of the proposed publication, the Alabama defendants' position with respect to the proposal, and plaintiff's basis for believing its plan to be both commercially reasonable and reasonably calculated to place potential AMSTEL claimants on notice of these proceedings.[2]

Plaintiff's filings reflect that it has engaged in extensive research and consultation in an effort to devise an appropriate means of giving notice to potential AMSTEL claimants.  In particular, Fathom has contacted numerous persons and organizations with experience in salvage law both in the United States and in Great Britain, as well as international admiralty counsel, for advice and recommendations.  On the basis of that research and consultation, Fathom has concluded that the *London Times* "is the most popular vehicle for providing notice in admiralty claims, particularly where a British ship may be … involved." (Doc. 218, at 2.)  Fathom thus proposes to publish a notice thrice-weekly for two consecutive weeks in both the *London Times* and the *Press Register*, and to allow for a 60-day period for claimants to file a statement of right or interest in the vessel.  To that end, Fathom submits a proposed form of "Notice of Action in Rem and Arrest" as Exhibit A to its Motion.  In support of its request for approval of this notice plan, Fathom indicates that the other interested parties (the State of Alabama and the Alabama Historical Commission) do not object to this proposal.

---

[2]     Plaintiff did not meet the May 24 Order's deadline of June 30, 2012 for filing its proposed plan; however, it did timely file a Motion for Additional Time (doc. 217) on the grounds that plaintiffs required additional time to conduct the necessary research and consultation, and to formulate an appropriate plan.  That Motion for Additional Time is **moot**, inasmuch as plaintiff has since submitted its proposed notice and other materials and information contemplated by the May 24 Order.

Of course, there is no easy, obvious means of furnishing effective notice of this matter to potential AMSTEL claimants or lienholders, who are now separated by one and a half centuries – not to mention an entire ocean – from the wreck.  When the Court instructed Fathom to conduct research and investigation in order to formulate an appropriate notice proposal, it did so with the express intent of "forc[ing] Fathom to discuss possible notice alternatives with shipping / maritime / insurance / legal organizations that may have helpful insights into which fora and methodologies may be most effective to notify any prospective claimants that may exist."  (Doc. 214, at 2 n.1.)  Upon careful review of plaintiff's June 28 Status Report and August 1 Motion to Approve Notice, the undersigned is satisfied that Fathom has diligently discharged these research and consultation obligations, and that it has formulated a reasonable notice plan in good faith.  The Court further determines that the proposed manner of notice identified in plaintiff's filings appears reasonably calculated to give notice to potential AMSTEL claimants.

With regard to the form of the notice, the Court generally finds that it comports with Supplemental Rules C(4) and C(6), as well as Local Admiralty Rule 3, and that it effectively and accurately conveys to potential claimants their rights and obligations to appear and be heard in this action within the specified time periods.  Moreover, the expanded 60-day period proposed by plaintiff (rather than the 14-day period outlined in Supplemental Rule C(6)) for filing statements of right or interest is reasonable and appropriate, as is the proposed 60-day deadline for filing claims in intervention.

The one portion of the proposed Notice about which the undersigned has reservations is its meager description of the vessel and the wreck site.  In its proposed form, the Notice says only that "[t]he location of the shipwreck and certain artifacts suggests that the vessel located at the coordinates stated above is the *Amstel*, a merchant vessel that sunk in 1860."  (Doc. 218, Exh. A.)  But this language would tell prospective claimants nothing or next to nothing about the AMSTEL, where it sank (unless they look up the coordinates found in the caption), or what its history was.  A fundamental purpose of this notice exercise is to jog memories or trigger recognition on the part of potential claimants of any right and interest they may have in these proceedings; therefore, it strikes the Court as fair, appropriate, and probably necessary to flesh out the skeletal description in the Notice's first paragraph.  To that end, the last sentence of the first paragraph of the proposed Notice is to be deleted and replaced with the following text: "The court has provisionally identified this shipwreck as the *Amstel*, a merchant vessel built in

the Netherlands for the Boissevain Company in 1842 and sold to an English company in 1860. The *Amstel* ran hard aground near the mouth of Mobile Bay in what is now the territorial waters of the State of Alabama in late May or early June of 1861.  At that time, the vessel was carrying a cargo that included stone slabs, railroad axles and a 31-inch, 700-lb bronze bell cast by the Meneely Bell Foundry of West Troy, New York in 1860.  It is believed that the vessel gradually sank or disintegrated into the sea thereafter."

Subject to the foregoing modification, Fathom's Motion to Approve Notice (doc. 218) is **granted**.  Plaintiff is **ordered** to amend the "Notice of Action in Rem and Arrest" found at Exhibit A to its Motion as specified above, and to cause such Notice to be published in the *London Times* and the *Press Register* three times per week for two consecutive weeks, with the first such publication to occur no later than **September 10, 2012**.  Upon completion of publication, plaintiff is further **ordered** to file proof of publication, confirming the dates of publication and the contents of the notice for both the *London Times* and the *Press Register*. Any person asserting a right of possession or ownership interest in the *Amstel* or its contents / artifacts must file a verified statement of right or interest in this District Court within 60 days after the final date of publication of notice.  And any party asserting a maritime lien or writ of foreign attachment must file its claim in intervention in this District Court within that same 60-day period.

Regardless of whether any putative *Amstel* claimants or intervenors appear in this matter or not, it is apparent that the parties require discovery as to the abandonment issue (and perhaps other issues as well) before plaintiff's claims as to Shipwreck #1 can be fully and finally adjudicated.  (Doc. 212, at 2.)  Accordingly, on or before **November 30, 2012**, Fathom, the Alabama state defendants, and any claimants or intervenors must meet and file a joint proposed discovery plan (specific to Shipwreck #1) that comports with Rule 26(f)(3), Fed.R.Civ.P., and Local Rule 26.1(d).

DONE and ORDERED this 6th day of August, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE